Your Honours, may it please the Court, Robert Cry for Bank Melli, and if I may reserve three minutes for rebuttal. The District Court's opinion cannot be reconciled with settled summary judgment standards. The judgment creditors acknowledge that TRIA applies only where the respondent owns the And on this record, there is clearly at least a genuine dispute of fact over whether Bank Melli owns the funds in the account at issue. Isn't that issue foreclosed by our previous opinion? Respectfully, Your Honor, it is not. On the prior opinion, this Court was addressing the question on a motion to dismiss. The question was whether the complaint plausibly alleged, drawing all reasonable inferences in the judgment creditors' favor, that the assets were owned by Bank Melli What is the evidence, in your view, that supports a concept that there is not an — that there is ownership that is not Bank Melli's? The critical evidence on this point, Your Honor, can be found at pages 250 and 253 of the excerpts of record. Except that ignores 252 and 255, wherein it is quite clearly stated that the account holds the Bank Melli's funds. If I can take you through those documents, Your Honor, particularly page 252, which you pointed to, the left-hand column, the heading of the column is Owner, and on the relevant row it lists Visa International Service Association. And then if I can take, Your Honor, to page ER 251, there are instructions there, and those instructions say, in describing what the person filling out the form should put in the column that's labeled Owner, it says, Owner, identify the owner of the property. These documents were submitted by Visa. They were certified to be true and accurate by an internal legal department representative of Visa. But the prior opinion has a heading that blocked assets are property of Bank Melli as a matter of law, as I understand it. In other words, on the allegations in the complaint which have to do with the legal rights that went with Visa's holding of this property, the conclusion was that this is and then there's another sentence that's perfectly clear about that. So it doesn't what ever this piece of paper meant by ownership, the prior judgment, the prior opinion as law of this case seems to set out definitively that I think on the actual transactional facts, whatever you call it, it was the property of Bank Melli, the bank, no? Your Honors, I don't think you can separate what this Court said in its opinion from the posture in which the Court was addressing the case. Well, sure you can in general. I mean, in general, if you have a motion to dismiss, you have a set of allegations. Those allegations, the allegations that were in the complaint were not disproven by anything that you're pointing to now. They're not inconsistent with the statement on this document. That is, that they, that these assets as a matter of California law were available for creditors to be assigned and so on. That's all so, unless you could have, you might have been able to show some evidence that it wasn't so, but you didn't. So given what was in the complaint and what the prior case decided, what's left open? What the prior court decided was that on a complaint that alleged that Visa owed money to Bank Melli, and that is all the complaint alleged, the prior opinion, I think the fairest way to read it in light of the posture of the case was that a jury could reasonably infer from that allegation that Bank Melli. But that's not what it said. That's the problem. It said, as a matter of law, this is the property of Bank Melli. Your Honor, though, I realize those words aren't explicit, but in viewing a prior opinion, I think this Court should give it a fair reading in light of the posture in which it arose. Ownership is a fact question. There's any number of cases, I can say, from this Court that's, that make clear that ownership is a fact question. In particular, you know, the, this Court has a decision in Bogan v. Hines from 65F2nd 524, which says repeatedly, the variament of ownership of real estate or of any specified interest therein was very early in the history of our jurisprudence held to be the averment of an ultimate fact. The statement of ownership, title, or interest by the Court as resting in any individual is a finding of ultimate fact and not a conclusion of law. It's immaterial whether the finding is the ultimate fact, is the finding of fact, or the so-called conclusion of law. It is a finding of ultimate fact that supports the judgment in that case. So I, you know, whether Party A or Party B owns a particular piece of property is a finding of fact. And so if this Court is deciding a case on a motion to dismiss, what it's deciding is, does the complaint plausibly allege that this is, in the words of this Court's opinion, the heading in this Court's opinion, which Your Honor quoted, the blocked assets are property of Bank Malley. So what this Court held was on a motion to dismiss, a jury could reasonably infer from the allegation in the complaint that Visa owned Bank Malley money, that the money in this account was Bank Malley property. But on a motion for summary judgment, it's a completely different standard. The inferences have to be drawn in our favor. Sotomayor, let's assume, for the sake of this question, that Visa owns this money. They still owe the money is still owed to Bank Malley, whoever owns that account right now. And the holding of the previous case was that if money is owed, that it may be assigned to the judgment creditor, regardless of, you know, where its current ownership lies. But, Your Honor, on the record here, the other side has stipulated that TRIA requires ownership. The fact that property may be assignable under the statute of limitations  of the statute of limitations of the statute of limitations of the statute of limitations does that TRIA does not require ownership? That would be contrary to the D.C. circuit advertise ? Kagan. No, what the prior opinion held was that, as Judge Graber said, that if the assets are reachable and assignable, then they're property. That's a legal conclusion. You are quarreling with that, and it may be quarrelable with, but it was a legal holding of the prior opinion. And you're not disputing the facts that were relevant to that holding, right? I'm not disputing the fact that Visa owns Bank Mellie money. I don't think it's relevant to this case whether that means But you may not think it's relevant, but the prior panel did think it was dispositive. I thought it was dispositive to the issue before it, which was, does a complaint that plausibly alleges that Visa owes Bank Mellie suffice? Well, the argument that you made then was the same. You said these assets belong to someone else. They cannot be attached, period. That was the argument then, as a matter of law. And we disagreed with that in that prior opinion. We said if you owe money, it can be attached. So I just — I mean, I know you want it to be coming out differently, but it seems to me that it's already been decided. Again, I apologize for — I understand your position, but it seems to me that we were looking at a legal question, not a factual question. And all I would say in response to that, Your Honors, is ownership is clearly a question of fact. Which party owes, whether this is funds that Visa has somehow given to Bank Mellie already or merely funds that Visa has earmarked and segregated and set aside in an account for Bank Mellie, which is not enough under the statute, those actual facts were not in front of the Court on a motion to dismiss. So you pointed us to Excerpt of Record 253. What else do you have to show genuine issue of material fact? Apart from the two OFAC forms and the various portions that I read of them, I would also submit that the statement filed by the Visa representative, Mr. Bailey, stating that this is money that is due and owing but not paid to Bank Mellie, by itself that declaration would permit a reasonable jury to find that this is merely a debt. It's not money whose ownership has already been transferred. So I believe the combination of those two pieces of evidence are what establishes a genuine dispute of fact here. Okay. Do you want to reserve? Thank you, Your Honor. Good afternoon. May it please the Court. Patrick Petroselli on behalf of the judgment creditors. We agree that this case can and should be resolved simply by applying the Court's  in front of the district court on summary judgment. The Court did not decide as a factual matter that the judgment creditors had plausibly alleged a factual issue as to whether those assets were owed to Bank Mellie. The Court very clearly held that Bank Mellie has a contractual right to obtain payments from Visa and Franklin. Under California law, those assets are property of Bank Mellie and may be assigned to judgment creditors. Now, presumably, those underlying facts could have been disputed on summary judgment. They could have come in and said, in fact, there is no contractual right or something like that. Or in fact, these transactions never occurred or whatever, but that isn't what happened here. That's exactly right, Your Honor. Bank Mellie could have disputed whether it had a contractual right to those funds. It did not. The undisputed facts on summary judgment conclusively show that Bank Mellie is owed $17 million from Visa, and Visa has deposited those funds into the Court's registry. The securities that are referenced in the OFAC reports that Mr. Crye referenced, Visa converted those securities to cash and deposited the cash into the Court's registry. Those securities are no longer held anywhere. So to suggest that those would create an issue of fact, I think, is just completely outside of the scope of what this Court held. The opposing counsel has stated that you agreed that there had to be an ownership interest in order to for you to succeed. What is your response to that argument? We agree that TRIA requires an ownership interest, and we believe that this Court held that Bank Mellie has an ownership interest in funds that are due and owing to it. And the undisputed facts on summary judgment show that Bank Mellie is owed $17 million. And so under this Court's prior decision, the ownership interest in TRIA is satisfied. I mean, I was not on the prior panel. And when you say the holding that baldly, I kind of wonder about it, although I don't wonder whether it was the holding. Because, I mean, you have here a somewhat different situation than an ordinary due and owing situation. You have a bunch of segregated money that Visa set aside. In other words, what if they hadn't set the money aside and they were trying to come after the building that Visa owned, because there was money due and owing? Would you be in the same position? If the judgment creditors were trying to go after money that a building that Visa owned. A building, right. Ultimately, Visa owed Bank Mellie $17 million, and it transferred $17 million into the Court's registry. I understand that, but suppose they haven't. I mean, is your the underlying assertion that any money due and owing is property? Any money that's due and owing that Visa gives up and deposits into the Court's registry becomes Bank Mellie's property. It is subject to execution under TRIA. If Visa was retaining some type of ownership interest in the property, then we would have a different case. But here Visa is disclaiming any beneficial ownership to the assets that they transferred into the Court's registry, and there's no dispute that those funds are due and owing to Bank Mellie. If it wasn't for the blocking order that is in place right now, the multiple blocking orders that are in place, Bank Mellie would have an absolute right to those funds. But Bank Mellie can't assert those rights in this proceeding because the blocking order prevents them from doing that. The judgment creditors, on the other hand, are not similarly hindered to go after those assets, because under TRIA we're allowed to seek execution of blocked assets. But if I understand your point correctly, it is that the placement of the $17 million in change into the Court's registry is an absolute disclaimer of ownership on the part of Visa, because they will never get it back. They aren't asking for it back. They say, okay, Court, give it to that party or give it to that party. Don't give it back to us. Is that your position? That's correct. Visa is giving up its right, whatever right it may have once had, into those assets, and they can never get it back. Bank Mellie has tried to characterize that as Visa's litigation position, as if there's something nefarious going on here. But Visa's decision has very real consequences for Visa. Visa can never again retain that $17 million. They can't come to the judgment creditors, you know, a couple of years down the line and just say, oh, you know, just kidding, that was our money, we were just taking a litigation position, give it back. The money is no longer Visa's. Whatever interest Visa had in it is gone. They've given it up. And the only issue left for the Court to decide is who among the various claimants to the fund is the owner of those funds. And we're the only parties who have actually affirmatively sought distribution of the assets from the Court's registry. I don't know if there are any further questions. Well, just to tie the ends up a little, there's a whole second set of briefing about the any property interests that might pertain to just the fact that there's money due in owing and as an inchoate property right. But it's all no never mind if we agree that the earlier case decided that the money, the $17 million itself is property. I completely agree. I think all of the other issues that are raised here with respect to interpleader jurisdiction, with respect to territorial jurisdiction are all side issues. If the Court decides to reaffirm, which we suggest, we submit that it should, to reaffirm its prior holding that contractual payments due to bank melee are assets of bank melee within the meaning of TRIA, yes, I do agree with that. I mean, interestingly, your ultimate position here is not the same as what the Court held earlier. In other words, you're saying that the reason we know that this is not that the visa doesn't own it is because they put it into the registry of the Court and said, you know, we're disclaiming any interest. The holding was other, was not based on that at all. My point today, Your Honor, is that any interest that Visa might have had in those funds was completely dissolved once they put the money into the Court's registry and named it. And I'm just pointing out that the prior ruling on the opinion of this Court, on which you're standing as well, as sort of two different feet, was not on that basis. It was on the basis that as money due and owing and, therefore, assignable under California law, it's property. Correct. And we agree with that holding. We agree that money due and owing to bank melee are assets of bank melee under TRIA. And then it wouldn't matter whether Visa had put the money in the registry and disclaimed interest. I was responding to Your Honor's question about whether if there was a building that we were going after, some other assets that Visa might have held. Oh, right. But that suggests that it wasn't simply that there was money due and owing. It was that it was segregated money that Visa was willing to disclaim. I don't know if any of this matters, because the prior holding says whatever the prior holding says. But it's a different theory than the one you're advancing today. I think that when you have a situation where there is $17 million that had been blocked since 1995, that was due and owing to bank melee, that would have been paid to bank melee a long time ago had it not been for the blocking orders, and that is then deposited into the Court's registry, where Visa steps back from that money, says whatever interest we might have had in that money, we are disclaiming that interest. We have these claimants in front of the Court who are all saying that they have a right to it, and the Court needs to decide who owns this property. The judgment creditors, as the only parties who affirmatively sought distribution of those assets, it is bank melee's property. Bank melee can't seek distribution of those assets, and we did. And under TRIA, we should be entitled to distribution of those funds. I don't know if there are any further questions, but otherwise, rest on our papers. Thank you. Thank you, counsel. Let's put three minutes on the rebuttal clock. Thank you, Your Honor. Rule 67 could not be clearer that depositing money into the Court's registry does not change the ownership of those funds. The LTV case that's cited on page 7 of our reply and the whole series of other decisions following that make that abundantly clear. In LTV, a party that owed a debt tried to deposit money into the registry and then argued that it didn't have to pay penalty interest anymore because it had given up the money. But the Court said, no, depositing money into the registry does not change ownership. You still owe penalty interest, even though it's in the registry. So this entire theory that you can change ownership to another party just by taking advantage of the interpleader procedure under Rule 67 has no basis in the rule or the case law interpreting it. The theory that Visa would have paid these funds if not for the blocking statute, that is not an argument that bank melee owns these assets in the world we actually live in. That is an argument that in some hypothetical alternative universe where things might have unfolded differently, maybe then bank melee would have owned those assets. But that's not what the statute turns on. Kagan to tell me something. I don't know that the record really explains exactly what the role was of bank melee in or in the Visa transactions. Was Visa ‑‑ was bank melee advancing the money to merchants and then it was paid to Visa, and Visa is supposed to pay them back for money they advanced, or was it a fee for some specific service, or what was it, what was this money, what was due and owing? It's difficult, Your Honor, and the record is not completely clear on it, but my understanding was that there were transactions between Iranian merchants and Iranian consumers using Visa-branded cards. Bank melee was acting as the settling bank for those transactions. Meaning it was paying the merchants. So it would incur liabilities or assets. It was advancing money, essentially, on behalf of Visa. I don't know enough about the mechanics of the transactions to know whether advancing is the right word, but certainly bank melee was engaging in transactions to settle those cardholder transactions. And it wasn't simply providing a service and getting paid, say, 10 cents on the dollar for running the paperwork. It was actually paying money out. That's my understanding, Your Honor. I mean, it would, bank melee would incur a net debit or credit position on those underlying cardholder transactions, and then Visa would settle whatever bank melee is in that position. Well, that sounds a lot more like property, doesn't it? Well, it's an underlying. If what was due and owing was some amount of money for, you know, running paperwork, that would be one thing. But if it was, what was due and owing was that they had advanced funds that, that Visa, essentially on behalf of Visa, that's the other thing. It has been argued this way, but it strikes me that this is more than a simple due and owing situation. It's still a contractual liability, Your Honor. The obligation that Visa owes to bank melee is not a result of some property interest that bank melee has in its own transactions. It's a contractual duty that Visa agreed to pay bank melee. And I don't think there's been any dispute about that point. I'll just speak briefly to the disclaimer point. You know, Visa cannot make this our money just by getting up and saying it is not Visa's money. At most, the fact that Visa has disclaimed the purported property interest is evidence that a jury could consider, along with all the other evidence in the record, including the multiple OFAC submissions where Visa expressly represented to the Federal government under a solemn declaration that it was true and accurate that this was Visa's money. Those sorts of arguments may be things that create a genuine issue of fact, but they don't eliminate one where you have conflicting statements and other documents that would plainly support a determination by a finder of fact that this was money not that bank melee owned, but that it was money that Visa owned, that Visa earmarked for a specific purpose, that Visa put in an account for a specific purpose, and that Visa fully intended to pay back someday if it had the ability to do so. But that day never came. And so a perfectly rational reading of this record, if you are a jury, is that that money sitting in Visa's account was still Visa's funds, that it had just labeled bank melee funds because it knew it had to repay it, but Visa was still the owner, and that's exactly what Visa told the Federal government, and that's what precludes summary judgment in their favor today. Roberts. Thank you for your argument. Thank you both for coming out here for the arguments and your efficient presentation. We understand it's an important case, and we'll be in recess. All rise.
judges: Thomas, Graber, Berzon